# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.D.O.T.,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,[1]<br><br>Respondents. | Case No. 1:25-cv-01956-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT MOTION FOR PRELIMINARY INJUNCTION AND RELEASE PETITIONER<br><br>(ECF No. 2)<br><br>ORDER GRANTING PETITIONER'S MOTION TO PROCEED VIA PSEUDONYM AND GRANTING RESPONDENTS' REQUEST FOR JUDICIAL NOTICE<br><br>(ECF Nos. 3, 10) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of Ecuador who fled Ecuador in 2024 due to the persistent persecution and harm she endured at the hands of her ex-husband who has threatened to kill her. (ECF No. 1 at 8, 11; ECF No. 1-2 at 1, 4.[2]) On December 25, 2024, Petitioner presented herself

---

[1] Respondents argue that all named Respondents with the exception of Petitioner's immediate custodian, Christopher Chestnut, the Warden of the California City Correctional Facility, should be dismissed. (ECF No. 9 at 1 n.1.) However, in the interest of expedience, the Court recommends deferring determination of this issue to the merits phase.

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

at the San Luis Port of Entry in San Luis, Arizona, and surrendered to immigration authorities. Petitioner was detained for approximately four days. (ECF No. 1-2 at 1; ECF No. 10-1.) On December 28, 2024, the Department of Homeland Security ("DHS") issued a Form I-94, Arrival/Departure Record, and Petitioner was paroled pursuant to section 212(d)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5). (ECF No. 1-5 at 6–6.) Petitioner was granted parole until February 26, 2025. (Id. at 5.)

Upon Petitioner's release, she was instructed to report to U.S. Immigration and Customs Enforcement ("ICE") and to comply with reporting requirements through a cell phone application. Petitioner was instructed to take a photo on January 14, 2025, and to report to the ICE office in San Francisco on the same day. DHS did not require Petitioner to post a bond. (ECF No. 1-2 at 1.) On January 14, 2025, Petitioner reported in-person at the ICE office in San Francisco as instructed. At that appointment, ICE officials took the phone Petitioner had been given at the border, issued a new phone with instructions on how to download and use the reporting application, and instructed Petitioner to report monthly by submitting a photo. (ECF No. 1-2 at 2.) That same day, DHS issued an order of release on recognizance, ICE Form I-220A. (ECF No. 1-5 at 7–9.)

Upon release, Petitioner established a life in Oakland, California and later Hayward, California, where she resided with her U.S. citizen fiancé. Prior to detention, Petitioner was in the process of obtaining a driver's license and applying for an employment authorization document. Petitioner has never committed any crimes, nor been arrested for any reason. (ECF No. 1-2 at 2.) Petitioner diligently complied with all requirements imposed by DHS through the Intensive Supervision Appearance Program ("ISAP"), such as monthly photo check-ins as instructed, answering phone calls from ISAP officers, and periodically reporting in-person at ISAP and ICE offices. To Petitioner's knowledge, she has always complied with the requirements of the ISAP program and her order of supervision. (Id.)

On November 15, 2025, Petitioner received an unexpected phone call from ICE officers asking her to verify her address. Petitioner told officers she was not at home at the moment but confirmed that she lived at the Hayward residence with her fiancé and offered to take a photo

that afternoon upon arriving home. ICE officers initially agreed but later stated they would be doing an in-person visit at her residence the next morning at 7:00 a.m. (ECF No. 1-2 at 2–3.) On November 16, 2025, at approximately 7:10 a.m., ICE officers arrived at the Hayward residence Petitioner shared with her fiancé. Officers informed Petitioner in English, a language she does not speak, that she was under arrest due to noncompliance with reporting. The officers handcuffed her and placed her in the back of their vehicle. Officers drove her to a building in Hayward, where she remained in the car and then transported her to the ICE office in San Francisco. Eventually, ICE transferred her to the California City Detention Facility. (Id. at 3.) Petitioner's asylum case remains pending before Executive Office for Immigration Review ("EOIR"). (ECF No. 2 at 7.)

On December 21, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO") challenging her detention on procedural and substantive due process grounds. (ECF Nos. 1, 2.) On December 22, 2025, the assigned district judge denied the motion for TRO as untimely, converted the motion for TRO to a motion for preliminary injunction, and referred the motion for preliminary injunction to the undersigned. (ECF No. 7.) Respondents filed an opposition, and Petitioner filed a reply. (ECF Nos. 9, 11.)

**II.**

**DISCUSSION**

**A. Motion to Proceed via Pseudonym**

Rule 10 of the Federal Rules of Civil Procedure requires that every complaint must include the name of all parties. Fed. R. Civ. P. 10(a). Rule 17 further provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The normal presumption is that the parties will use their real names, which is "loosely related" to the public's right to open courts and the rights of individuals to confront their accusers. Doe v. Kamehameha Schools, 596 F.3d 1036, 1042 (9th Cir. 2010). However, courts have allowed a party to proceed in anonymity where special circumstances justify the secrecy. Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000). In the Ninth Circuit, a party may proceed with the use of a pseudonym "in the 'unusual case' when nondisclosure of the party's identity 'is

3

necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'" Advanced Textile Corp., 214 F.3d at 1067–68 (alteration in original) (quoting United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). The Ninth Circuit has held that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." Advanced Textile Corp., 214 F.3d at 1068.

Courts have generally allowed a party to proceed with anonymity in three circumstances: (1) "when identification creates a risk of retaliatory physical or mental harm"; (2) "when anonymity is necessary 'to preserve privacy in a matter of sensitive and highly personal nature'"; and (3) "when the anonymous party is 'compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution[.]'" Advanced Textile Corp., 214 F.3d at 1068 (first alteration in original) (internal citations omitted). The Ninth Circuit has held that where the use of a pseudonym is used to shield the party from retaliation, the district court should evaluate the following factors: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation. Advanced Textile Corp., 214 F.3d at 1068 (citations omitted).

Here, Petitioner requests to be permitted to proceed under her initials "[g]iven the risk to S.D.O.T. and her family of harassment and retaliation." (ECF No. 3 at 1.) "S.D.O.T. has a pending asylum claim based on harm and mistreatment she experienced in Ecuador by her ex-husband. Additionally, litigation may require disclosure of S.D.O.T.'s private mental and physical health information. Such health information is highly personal, and disclosure of such information could lead to stigma and further harm for S.D.O.T." (Id. at 3.)

Courts have granted motions to file pseudonymously based on the petitioners' fears of persecution and retaliation should their identities be revealed. See, e.g., Doe v. Becerra, 732 F. Supp. 3d 1071, 1091 (N.D. Cal. 2024) ("Given the circumstances of Mr. Doe's petition and his allegations that he will face torture or death if he returns to Mexico, the Court previously granted Mr. Doe's motions to proceed under pseudonym[.]"); E.O.P. v. Andrews, No. 1:25-cv-00721-SKO (HC), 2025 WL 1735396, at *1 (E.D. Cal. June 23, 2025); Doe v. Wofford, No. 1:24-cv-

4

00943-EPG-HC, 2025 WL 1305859, at *4 (E.D. Cal. May 6, 2025); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *1 (E.D. Cal. Mar. 19, 2025).

Based on the Court's review of the severity of the harm, the reasonableness of the Petitioner's proffered fears, and Petitioner's vulnerability to retaliation, the Court finds that the need for anonymity in this case outweighs countervailing considerations. See Kamehameha Schools, 596 F.3d at 1042. Accordingly, Petitioner's motion to proceed via pseudonym is granted.

### B. Request for Judicial Notice

Respondents request the Court to take judicial notice of the Form I-213 and DHS Form I-862 pursuant to Federal Rule of Evidence 201(b). (ECF No. 10.) "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Petitioner has not opposed the request.

The Court will grant Respondents' request and "take notice of the existence of [the Form I-213 and DHS Form I-862] because they are official agency records from [Petitioner]'s A-file." Dent v. Holder, 627 F.3d 365, 371 (9th Cir. 2010). See R.F.G.Z. v. Wofford, No. 1:25-CV-01995-KES-EPG (HC), 2026 WL 40509, at *2 n.3 (E.D. Cal. Jan. 6, 2026) (granting request for judicial notice pursuant to Federal Rule of Evidence 201(b) of various documents from petitioner's A-file); Guzman Salguero v. Nielsen, No. LACV 17-03883-VAP (JEMx), 2018 WL 6930775, at *1 (C.D. Cal. Jan. 10, 2018) (finding DHS Form I-862 Notice to Appear "is appropriate for judicial notice because it is a government document initiating removal proceedings in Immigration Court, and the Court is permitted to 'take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue'") (citation omitted), aff'd, 776 F. App'x 956 (9th Cir. 2019).

### C. Motion for Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 2 (2008) (citations omitted).

> Under the "sliding scale" variant of the *Winter* standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."

All. for the Wild Rockies v. Pena, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013)). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24 (citation omitted). An injunction may only be awarded upon a clear showing that the Petitioner is entitled to relief. Winter, 555 U.S. at 22 (citation omitted).

### 1. Likelihood of Success on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020) (citing Edge v. City of Everett, 929 F.3d 657, 663 (9th Cir. 2019)).

Petitioner contends that she "is likely to succeed on her claim that, in her particular circumstances, her current detention is unlawful because the Due Process Clause of the Constitution prevents Respondents from re-arresting her without first providing a pre-deprivation hearing before a neutral adjudicator where the government demonstrates by clear and convincing evidence that there has been a material change in circumstances such that she is now a danger or a flight risk" because "Petitioner has a protected liberty interest in her conditional release." (ECF No. 2 at 14, 16.) Respondents argue that "because petitioner is an inadmissible applicant for admission seeking initial entry into this country, she" "has 'only those rights regarding admission that Congress has provided by statute.' That is, petitioner is entitled only to the protections set forth by statute and 'the Due Process Clause provides nothing more.'" (ECF No. 9 at 9 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020)).)

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Even when the government has discretion to detain an

individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." Garro Pinchi v. Noem, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "Other courts, including this Court, have held similarly." J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). Regardless of whether mandatory detention under § 1225(b) is facially constitutional, and "[e]ven assuming Respondents are correct that § 1225(b) is the applicable detention authority for all 'applicants for admission,'[3] Respondents fail to contend with the liberty interest created by the fact that the Petitioner in this case was released[.]" J.E.H.G., 2025 WL 3523108, at *10.

Respondents' reliance on Thuraissigiam to argue that Petitioner has no due process rights is unavailing. "*Thuraissigiam* and its progeny are distinguishable," Aguilera v. Albarran, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016, at *10 n.8 (E.D. Cal. Dec. 4, 2025), because "[i]n *Thuraissigiam* the Supreme Court held that a petitioner who was stopped at the border did not have any due process rights regarding admission into the United States" whereas "the pending § 2241 petition does not challenge any determination regarding [Petitioner's] admissibility into the United States, but instead involves a challenge to [her] detention pending the conclusion of [her] removal proceedings," Rosado v. Figueroa, No. CV 25-02157 PHX DLR (CDB), 2025 WL

---

[3] The Court notes, however, that Petitioner was given an order of release on recognizance, ICE Form I–220A, which states: "In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions[.]" (ECF No. 1-5 at 8.) In regard to "INS Form I–220A 'Order of Release on Recognizance,'" the Ninth Circuit found "the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)." Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1112, 1115 (9th Cir. 2007). This indicates that Petitioner was released under § 1226(a), and as "numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later 'switch[ing]' tracks' to subject him to mandatory detention under § 1225(b)(2)." Orejuela Gutierrez v. Chestnut, No. 1:25-cv-01515-DAD-AC (HC), 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) (alteration in original) (quoting Salcedo Aceros v. Kaiser, No. 25-cv-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025))).

2337099, at *15 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025). See Castillo v. Wofford, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding Barrea-Echavarria v. Rison, 44 F.3d 1441, 1450 (9th Cir. 1995) (en banc) and Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020) "inapposite," rejecting Respondents' reliance "on the doctrine of 'entry fiction' to argue that Petitioner is an inadmissible noncitizen who should be treated as if she has not entered the country and generally has no right to procedural due process," and "reject[ing] Respondents' argument that 'entry fiction' cases guide the analysis for cases not involving an expedited removal process").

"Thus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been applied to Petitioner are sufficient to protect the liberty interest at issue." J.E.H.G., 2025 WL 3523108, at *11.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

As to private interest, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Second, the risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Rocha Chavarria, 2025 WL 3533606, at *4. See Kakkar v. Chestnut, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *7 (E.D. Cal. Dec. 15, 2025) ("Turning to the second factor, the risk of erroneous deprivation of Petitioner's liberty is high where, as here, '[the petitioner] has not received [and will not receive] any bond or custody redetermination hearing.'" (alterations in original) (quoting A.E. v.

Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025))). "Finally, as other courts have done, this Court concludes that the government's interest in detaining Petitioner without proper process is slight." J.E.H.G., 2025 WL 3523108, at *12. Accordingly, the Mathews factors weigh in favor of a bond hearing.

Based on the foregoing, the Court recommends finding that Petitioner is likely to succeed on the merits of her claim that she has a protected liberty interest in remaining out of custody and that her re-detention without a bond hearing violates due process.[4]

### 2. Irreparable Harm

In order to establish that preliminary injunctive relief should be granted, Petitioner must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22. "Deprivation of physical liberty by detention constitutes irreparable harm," Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018), and the Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained," Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). Accordingly, the Court recommends finding that Petitioner has demonstrated that irreparable harm is likely in the absence of an injunction.

### 3. Balance of Equities and Public Interest

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). "'[T]he public has a strong interest in upholding procedural protections against unlawful detention,' and the Ninth Circuit has recognized that '[t]he costs to the public of immigration detention are "staggering[.]"'" Jorge M. F. v. Wilkinson, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (second alteration in original) (first quoting Ortiz Vargas v. Jennings,

---

[4] In light of this conclusion, the Court declines to address Petitioner's substantive due process claim.

No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020); then quoting Hernandez, 872 F.3d at 996). Although the government has a strong interest in enforcing immigration laws, the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983), and the government's immigration enforcement interests are not undermined because Petitioner remains in removal proceedings. Accordingly, the Court recommends finding that the balance of equities and public interest weigh in favor of a preliminary injunction.

4. Conclusion

Based on the foregoing, the Court recommends finding that Petitioner is likely to succeed on the merits of her claim that her re-detention without a hearing violates due process, irreparable injury is likely in the absence of an injunction, and the balance of equities and public interest weigh in favor of a preliminary injunction.

"The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009)). The Court considers whether a pre-deprivation or post-deprivation bond hearing is appropriate based on the facts of this case.

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted his detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before his immigration

hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for his arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

In contrast, this Court ordered a parole revocation hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretextual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings*, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*Id*.

J.E.H.G., 2025 WL 3523108, at *11–12.

Here, there is nothing in the record before this Court establishing that Petitioner has violated any conditions of her release.[5] Respondents do not argue that Petitioner's re-detention was based on any violations or that Petitioner is now considered a flight risk or danger to the community. Accordingly, the Court recommends that a pre-deprivation hearing is appropriate based on the facts of this case, and that "the burden at any such hearing [be placed] on the government to demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight." J.E.H.G., 2025 WL 3523108, at *14 (citing Pinchi v. Noem, 792 F. Supp. 3d 1025, 2025 WL 2084921, at *7 (N.D. Cal. 2025)). See J.E.H.G., 2025 WL 3523108, at *14 ("[T]he immigrant's initial release reflected

---

[5] Petitioner alleges that when she was arrested, the officer stated that it was due to noncompliance with reporting. (ECF No. 1-2 at 3.) However, there is nothing in the record indicating that Petitioner was actually noncompliant, and Respondents do not provide any information whatsoever regarding any alleged violations.

a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

**D. Bond**

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any.*'" Id. (some internal quotation marks omitted) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Johnson, 572 F.3d at 1086 (quoting Jorgensen, 320 F.3d at 919). The Court finds that no security is required here. See Lepe v. Andrews, No. 1:25-cv-01163-KES-SKO (HC), 2025 WL 2716910, at *10 (E.D. Cal. Sept. 23, 2025) ("The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this, and the government has not established a need to impose a security bond.").

## III.

## RECOMMENDATION & ORDER

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Petitioner's motion for preliminary injunction (ECF No. 2) be GRANTED; and

2. Respondents be directed to immediately release Petitioner on the conditions of her prior release from custody until DHS proves to a neutral adjudicator by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight.

Further, the Court HEREBY ORDERS that Petitioner's motion to proceed via pseudonym (ECF No. 3) and Respondents' request for judicial notice (ECF No. 10) are GRANTED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 22, 2026**

STANLEY A. BOONE
United States Magistrate Judge